IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **MIKE TWUM BARIMAH,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-14-3324 |
| **BANK OF AMERICA, INC.** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mike T. Barimah had a bank account with Defendant Bank of America, Inc. ("BofA"). Between 2006 and 2012, certain funds deposited in Barimah's account with BofA allegedly were withdrawn by his cousin, Kwame Adofo, formerly a Co-Defendant in this case. Barimah filed suit alleging various claims associated with what he characterized as a conspiracy between Adofo and BofA regarding the unauthorized withdrawal of these funds. Subsequently, Barimah amended his complaint in such a manner as to dismiss (1) all of his claims against Adofo, *see* ECF Nos. 28, 34–36, and (2) dismiss all but one claim against BofA, *see* ECF Nos. 29 & 35. The sole remaining claim alleges violations by BofA of the Maryland Consumer Protection Act (the "MCPA"), Md. Code Ann., Com. Law § 13-301 *et seq.*, relating to a letter that Barimah received from BofA informing him that BofA's fraud investigation with respect to Adofo's withdrawals had revealed no unauthorized account activity. BofA and Barimah have filed cross-motions for summary judgment, respectively. Def.'s Mot., ECF No. 49; Pl.'s Mot.,

ECF No. 59.[1] Because I find that the MCPA does not apply to the fraud investigation letter that BofA sent to Barimah, I will grant BofA's motion for summary judgment and deny Barimah's motion for summary judgment.[2]

## I. BACKGROUND

The factual background of this case is long and complex; however, only a small portion of it is relevant to Barimah's sole remaining claim and will be discussed here. Barimah opened an account ending in 1063 with Nations Bank, NA, in the 1990s, *see* Jt. Rec. MSJ_0040, ECF No. 49-6;[3] this account subsequently was transferred to BofA after Nations Bank, NA, merged with BofA, *see* Pl.'s Sealed Mot. 6. Barimah lived in Ghana but visited the United States frequently. Jt. Rec. MSJ_0031, ECF No. 49-6. He did not visit the United States for a ten-year interval between 2002 and 2012. Jt. Rec. MSJ_0033, ECF No. 49-6. In or around May and June 2012, Barimah was in the United States. *See* Jt. Rec. MSJ_0050, ECF No. 49-6.

---

[1] Accompanying BofA's motion for summary judgment is a memorandum of law, Def.'s Mem., ECF No. 49, and sealed memorandum of law, Def.'s Sealed Mem., ECF No. 50. Included in Barimah's motion for summary judgment is an opposition to BofA's motion; Barimah also filed a sealed version of this document, Pl.'s Sealed Mot., ECF No. 58. BofA filed a sealed response, Def.'s Resp., ECF No. 66, which serves as a reply with respect to its motion for summary judgment and an opposition to Barimah's motion. Barimah also filed a sealed response, Pl.'s Resp., ECF No. 69, which is a reply with respect to his motion for summary judgment. The cross-motions for summary judgment are ripe for review. A hearing is unnecessary in this case. *See* Loc. R. 105.6. To the extent that I reference sealed documents, the portions of those documents referenced are unsealed.

[2] In addition to the cross-motions for summary judgment presently before me, there are seven motions to seal. I will address them in a separate section of this memorandum.

[3] I will refer to the parties' collective exhibits as Jt. Rec.; in compliance with the Case Management Order, ECF No. 19, the exhibits include consecutive pagination of all exhibit pages using the "MSJ_" prefix. Many of these exhibits contain multiple types of documents (e.g., a deposition followed by bank statements all in the same exhibit). The parties have filed the exhibits separately as attachments to their briefings and as individual filings, *see, e.g.*, ECF Nos. 70, 72, & 74. Additionally, some exhibits have been filed both in sealed and unsealed versions. *See, e.g.*, ECF Nos. 49-8 & 51-1. For these reasons, I will not only cite to the "MSJ_" page number but also provide the ECF Number of the document as well.

When Barimah opened his account, he directed all statements to be mailed to an address belonging to his cousin, Kwame Adofo, in Maryland. Jt. Rec. MSJ_0041, ECF No. 49-6. From the opening of the account until 2012, the bank account statements were to be sent to Adofo. *Id.* From 2006 to 2012, Adofo did not send any bank account statements to Barimah, and Barimah did not otherwise review them. *See* Jt. Rec. MSJ_0049–50, ECF No. 49-6.

During this time period, Barimah authorized Adofo to conduct certain transactions with respect to the BofA account. *See* Jt. Rec. MSJ_0042, ECF No. 49-6. Adofo apparently made purchases on behalf of Barimah from 2006 to 2012 using the BofA account. *See* Jt. Rec. MSJ_0174, ECF No. 49-7. Adofo did so using ATM account withdrawals, debit transactions, and checks. *See* MSJ_0242–424, ECF No. 49-7. In November 2006, the balance on Barimah's account was $81,152.22. Jt. Rec. MSJ_0184, ECF No. 49-7. In October 2012, the balance on Barimah's account was around $20,000. Jt. Rec. MSJ_272, ECF No. 49-8. Barimah claims that these withdrawals by Adofo were unauthorized. *See* Jt. Rec. MSJ_0042, ECF No. 49-6.

On November 23, 2012, Barimah filed a fraudulent activity report contesting certain activity on his account between 2011 and 2012. *See* Jt. Rec. MSJ_0025–27. Barimah claimed that he did not receive an ATM/Check Card relating to the BofA account and that he had no knowledge of the identity or whereabouts of the individual using the card. *Id.* In response to Barimah's fraudulent activity report, BofA sent a December 27, 2012, investigation letter ("Investigation Letter") to Barimah with respect to his BofA account ending in 1063. *See* Jt. Rec. MSJ_0427, ECF No. 49-8. This letter reported the results of BofA's fraud investigation, stating that "no error has occurred in this instance. Our records show the transaction activity in question was authorized and posted correctly to your account." *Id.* The letter also reversed the

3

temporary credit of $9,571.00 that had been applied to Barimah's account pending the fraudulent activity investigation. *Id.*[4]

## II.  DISCUSSION

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Celotex v. Catrett*, 477 U.S. 317 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*  "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Baltimore City Bd.*

---

[4]     The parties have substantial disagreement with respect to the factual record of this case. *See* Pl.'s Sealed Mot. 5–28.  Because I will grant BofA's motion for summary judgment, I have presented the facts in a light most favorable to Barimah, the non-moving party, to the extent the evidence allows.  There is significant disagreement with respect to the background facts, including how Adofo withdrew the funds; how he obtained the ATM card linked to the account; whether the account was a joint account with both Adofo and Barimah named as account owners; if it was a joint account, how it became one; and the extent and sufficiency of BofA's fraud investigation.  Because these facts are not relevant to the narrow issue addressed by my ruling, I have not discussed them here.

*of School Comm'rs*, No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

In the absence of supporting evidentiary materials, an attorney's *ispe dixit* argument about the facts is not sufficient to raise disputes of material fact.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Further, "[t]he court need consider only the cited materials . . . ." Fed. R. Civ. P. 56(c)(3), and is not obligated to sift through the summary judgment filings in search of facts the parties have not deemed worthy of citing themselves.

### A. The Investigation Letter Is Not a Basis for a MCPA

Barimah pleaded that BofA's December 27, 2012, letter violates the MCPA. *See* Am. Compl. ¶¶ 102–108. The MCPA states relevantly:

> [a] person may not engage in any unfair or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in:
>
> (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;
> (2) The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;
> (3) The offer for sale of course credit or other educational services;
> (4) The extension of consumer credit;
> (5) The collection of consumer debts; or
> (6) The purchase or offer for purchase of consumer goods or consumer realty from a consumer by a merchant whose business includes paying off

consumer debt in connection with the purchase of any consumer goods or consumer realty from a consumer.

Md. Code Ann., Com. Law § 13-303. The MCPA defines "[u]nfair or deceptive trade practices" to include a "(1) [f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and a "(3) [f]ailure to state a material fact if the failure deceives or tends to deceive." *Id.* at § 13-301. In addition, certain statutory violations also constitute unfair or deceptive trade practices. *See id.* at § 13-301(14).[5] "This title shall be

---

[5] In Barimah's amended complaint, he pleaded that BofA violated the MCPA by engaging in unfair or deceptive trade practices under Md. Code Ann., Com. Law §§ 13-301(1) and 13-301(3) only. *See* Am Compl. ¶ 103. He raises for the first time in his response to BofA's motion for summary judgment, that BofA also engaged in unfair or deceptive trade practices under § 13-301(9), *see, e.g.*, Pl.'s Sealed Mot. 33–34. Section 13-301(9) defines unfair or deceptive trade practices as

> (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:
>
> (i) The promotion or sale of any consumer goods, consumer realty, or consumer service;
> (ii) A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or
> (iii) The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental

Because Barimah raises the alleged violation under § 13-301(9) for first time in his response to BofA's motion for summary judgment, it was not properly pleaded, and I will only address the alleged violations under §§ 13-301(1) and 13-301(3). However, even if I were to consider BofA's alleged violation of § 13-301(9), it would be dismissed for the same reasons as the other alleged violations of the MCPA.

Barimah also states in his motion that BofA violated the MCPA

> in failing to provide him with documentation they relied on during their investigation and subsequent repeated denial by stating there was no error without taking into account the information that was available to the bank during its investigation and persistent active concealment of the fact that Adofo had been joined to his account and granted an access device in his own name.

6

construed and applied liberally to promote its purpose." *Id.* at § 13-105; *see also State v. Cottman Transmissions Sys., Inc.*, 587 A.2d 1190, 1204 (Md. Ct. Spec. App. 1991).

The General Assembly of Maryland documented its legislative findings and purpose in enacting the MCPA:

> (a)(1)  The General Assembly of Maryland finds that consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit.
>
> . . .
>
> (b)(1)  It is the intention of this legislation to set certain minimum statewide standards for the protection of consumers across the State . . .
>
> (2)  The General Assembly is concerned that public confidence in merchants offering goods, services, realty, and credit is being undermined, although the majority of business people operate with integrity and sincere regard for the consumer. . . .

Md. Code Ann., Com. Law § 13-102. However, the MCPA does not apply to unfair or deceptive trade practices in *all* contexts. Rather, it prohibits these practices only in the contexts as set forth in § 13-303. Barimah has not identified the particular provision of § 13-303 under which he is bringing his claim. But, in taking a liberal view of Barimah's allegations, it is only plausible that he is bringing his claims under §§ 13-303(1), 13-303(2), and 13-303(4) as well as based on a violation of the Electronic Funds Transfer Act (the "EFTA"), 15 U.S.C. § 1693 *et seq.*

1. *§§ 13-303(1) and 13-303(2)*

Under §§ 13-303(1) and 13-303(2), unfair or deceptive trade practices are prohibited in the context of "[t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer

---

Pl.'s Sealed Mot. 15. As with Barimah's § 13-301(9), these alleged violations on the part of BofA for conduct subsequent to it sending the Investigation Letter exceed the scope of the allegations in Barimah's complaint. Accordingly, I will not address them here. However, even if I were to consider these allegations based on BofA's subsequent conduct, they also would fail for the reasons stated in this memorandum opinion and order.

7

realty, or consumer services" or the offer of the same. With respect to claims brought under §§ 13-303(1) and 13-303(2), the unfair or deceptive trade practice must induce the consumer to enter into the transaction. *See White v. Kennedy Krieger Inst., Inc.*, 110 A.3d 724, 755, *cert. denied sub nom. White v. Kennedy Krieger Inst.*, 116 A.3d 476 (2015) ("Our holding reflects the prior holdings of the Court of Appeals, as well as the underlying purpose of the [M]CPA to provide a broad remedy for consumers who are fraudulently induced into sale or lease transactions." (citing Md. Code Ann., Com. Law § 13–102(b)(3)). "The CPA squarely applies to leases and is designed in part "'to protect consumers from unfair or deceptive trade practices that *induce* [ ] prospective tenants to enter into a lease.'" *Id.* at 754-55 (quoting *Butler v. S & S P'ship,* 80 A.3d 298, 317 (Md. 2013)) (emphasis added). "[T]he deceptive practice must occur in the sale or offer for sale to consumers." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 636 (Md. 1995). Accordingly, the unfair or deceptive trade practice cannot be made after the sale or offer to be actionable under the MCPA. *See Scroggins v. Dahne*, 335 Md. 688, 696, 645 A.2d 1160, 1164 (Md. 1994) ("At the time the lease in the instant case was entered into, there was no chipping or peeling paint on the premises. As the chipping or peeling paint did not exist at the time the lease was entered into, the landlord could not be said to have engaged in a deceptive trade practice under the [M]CPA [for statements made during the term of the lease].").

BofA's Investigation Letter was dated December 27, 2012, well after Barimah opened his account. It cannot have induced him to open it or have been related to any offer BofA made in opening the account. Barimah argues that "Maryland Courts have held that the [MCPA] applies to deposit bank accounts and debit transactions as in the present case." Pl.'s Sealed Mot. 35 (citing *Margolis*, 110 A.2d at 791–95). He further argues that the court in *Margolis* found that the MCPA applies not just to the opening of the account but also to ATM transactions, which are

8

considered point-of-sale transactions. *See id.* at 36. However, the case in *Margolis* involved certain representations and disclosures made in a Deposit Account Agreement relating to overdraft fees that the bank charged the plaintiffs with respect to their checking account. *Margolis*, 110 A.2d at 791–95. It is unclear whether the plaintiffs in *Margolis* entered into the Deposit Account Agreement at the time of opening their accounts or whether the plaintiffs entered into this agreement each time they used their ATM cards as point-of-sale transactions. *Id.* As a result, it is not clear from *Margolis* whether Maryland courts have applied the MCPA to individual ATM transactions. And even if the court in *Margolis* recognized that the MCPA applies to individual ATM transactions, it did so in the context of an agreement disclosing its handling of debits and credits and associated overdraft fees that the bank would apply each time the consumer engaged in an ATM transaction. *Id.* This same reasoning does not apply to the present case. The Investigation Letter reports BofA's findings following its investigation of Barimah's fraud reports. As such, it did not relate to future ATM transactions by Barimah and cannot be reasonably interpreted as relating to a sale or offer for sale on the part of BofA to Barimah. Accordingly, the Investigation Letter cannot serve as a basis for an unfair or deceptive trade practice claim based on § 13-303(1) or 13-303(2).

   2. *§§ 13-303(4)*

Under §§ 13-303(4), unfair or deceptive trade practices are prohibited in the context of the "extension of consumer credit." The MCPA defines consumer credit as "credit . . . primarily for personal, household, family, or agricultural purposes." *See* § 13-101(d)(1). The MCPA does not define "extension of consumer credit," but this Court has looked to the definition in "an analogous statute, the Maryland Credit Services Business Act," which defines "extension of consumer credit" as "the right to defer payment of debt or to incur debt and defer its payment,

offered or granted primarily for personal, family, or household purposes." *See Robinson v. Nationstar Mortgage LLC*, No. TDC-14-3667, 2015 WL 4994491, at *3 n.2 (D. Md. Aug. 19, 2015); *see also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 466 (D. Md. 2013). The types of transactions that constitute extension of credit include loan modifications, *see Nationstar*, 2015 WL 4994491, at *3; *Marchese*, 917 F. Supp. at 466, and certain reverse mortgage products, *see Wiseman v. First Mariner Bank*, No. ELH-12-2423, 2013 WL 5375248, at *24 (D. Md. Sept. 23, 2013).

Although the Investigation Letter references "the temporary credit for $9571.00 that was previously applied to [Barimah's] account" and states that it would be reversed, this type of credit does not fall under the definition of "extension of consumer credit" recognized by this Court. BofA provided the temporary credit for the duration of its fraud investigation; its revocation of this temporary credit, having determined from its investigation that there was no fraud, cannot be interpreted as an "extension of consumer credit," which is "the right to defer payment of debt or to incur debt and defer its payment." Accordingly, the Investigation Letter cannot serve as a basis for an unfair or deceptive trade practice claim based on § 13-303(4).

3. *Applicability of the Electronic Funds Transfer Act*[6]

Barimah has also argued that the Investigation Letter violated the MCPA because it was also a violation of the EFTA, *see, e.g.*, Pl.'s Sealed Mot. 4; Pl.'s Resp. 14–16. The MCPA provides that certain statutory violations constitute unfair or deceptive trade practices. *See* Md. Code Ann., Com. Law § 13-301(14). The EFTA is not one of the listed statutory violations.

---

[6] It is unclear if Barimah is arguing that the EFTA is relevant in considering whether the MCPA is applicable to BofA's conduct with respect to sending the Investigation Letter to Barimah or whether such conduct constituted a violation of the MCPA. Because I will base my ruling on the applicability of the MCPA to BofA's conduct, I will discuss Barimah's argument on the relevance of the EFTA here.

Nevertheless, Barimah argues that the EFTA is relevant as a guide in determining whether the MCPA is applicable, stating that courts in Massachusetts and Missouri have adopted this reasoning when interpreting their consumer protection laws. *See* Pl.'s Resp. 14–15. As an initial matter, these decisions are not binding on this Court. Additionally, they are unpersuasive.

In *Berenson v. Nat'l Fin. Servs., LLC*, the United States District Court for the District of Massachusetts considered whether a violation of the EFTA constituted a violation of the Massachusetts consumer protection act, Mass. Gen. Laws Ann. ch. 93A, § 2. *See* 403 F. Supp. 2d 133, 149 (D. Mass. 2005). However, the scope of Mass. Gen. Laws Ann. ch. 93A, § 2 is much broader than the language in the MCPA. Mass. Gen. Laws Ann. ch. 93A, § 2 provides that "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." An act or practice violates this section if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection . . . ." Mass. Regs.Code tit. 940, § 3.16(3). The Massachusetts consumer protection act does not have the same limitations in the scope of its applicability as compared to the MCPA. *See* § 13-303. Accordingly, I do not find *Berenson* to be persuasive.

In *Gaffney v. Cmty. Fed. Sav. & Loan Ass'n*, the Missouri Court of Appeals found that the EFTA "sets out guidelines as well as the liabilities of the banks and the customer concerning the use of the automated teller machine." 706 S.W.2d 530, 533–34 (Mo. Ct. App. 1986). However, this case involved a state law claim for breach of contract on the contractual duty to debit a depositor's account only when an authorized transaction occurs. *See id.* at 532–34. The Missouri court did not apply the EFTA to a state consumer protection statute, much less to one

similar to the MCPA. Accordingly, I do not find *Gaffney* to be persuasive. For these reasons, I will not use the EFTA as a guide in determining whether the MCPA is applicable to BofA's conduct.

In summary, whether under §§ 13-303(1), 13-303(2), 13-303(4), or the EFTA, there is no basis in Maryland law for applying the prohibition against unfair or deceptive trade practices set forth in the MCPA to the content of a letter sent by a bank responding to a customer's fraud report. Nor has Barimah cited to any authority for such an application of the MCPA, and I have found none in my research of the statute or relevant case law. Indeed, the application of the MCPA to this case would depart from the purpose of the law as described in the statute: protecting consumers who are induced into entering into transactions based on unfair or deceptive trade practices. There existed other avenues to challenge Adofo's withdrawal of funds from Barimah's account that would have more properly held both Adofo and BofA liable, if the facts demonstrated that liability was warranted. Those claims have been dismissed voluntarily by Barimah and are no longer before me. Having abandoned these claims in pursuit of a single MCPA claim, Barimah has chosen to stake his claim on the applicability of a statute that does not address his dispute with BofA. For these reasons, I will grant BofA's motion for summary judgment and deny Barimah's motion for summary judgment.

### B. The Investigation Letter Is Not an Unfair or Deceptive Practice

Even if Barimah's claim was legally cognizable under the MCPA, it still would fail. In order to bring his claim under the MCPA, Barimah must demonstrate (1) that BofA engaged in unfair or deceptive trade practices under § 13-301 and (2) that this practice caused him actual loss or injury. *See Piortrowski v. Wells Fargo Bank, N.A.*, No. DKC 11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013). A plaintiff must establish that he or she "relied upon the

defendant's false or misleading statements and suffered actual loss or injury *as a result* of that reliance." *Pruitt v. Alba Law Group, P.A.*, No. DKC-15-458, 2015 WL 5030214, at *10 (D. Md. Aug. 24, 2015) (quoting *Butler v. Wells Fargo Bank, N.A.*, No. MJG-12-2705, 2013 WL 3816973, at *3 (D. Md. July 22, 2013)) (emphasis in *Butler*) (internal quotation marks omitted). Even assuming that Barimah can demonstrate that BofA engaged in unfair or deceptive trade practices under §§ 13-301(1) or 13-301(3), Barimah has not identified any evidence that he suffered actual loss or injury caused by BofA's Investigation Letter, which simply reported the outcome of its investigation of his fraud claim and the explanation that it did not find fraudulent activity.

Barimah argues that he suffered injury in both (1) his combined opposition to BofA's motion for summary judgment and cross-motion, *see* Pl.'s Sealed Mot. 38–41, and (2) his response, *see* Pl.'s Resp. 19–21. In these filings, he cites to the record only twice in support of his argument that he suffered actual loss or injury. *See* Pl.'s Sealed Mot. 40. First, Barimah states that "Adofo still had an ATM [card] at this point which was used to make withdrawals as late as October 22, 2012 in Jessup[,] Maryland." *Id.* However, his citation only shows that someone made a withdrawal from the account ending in 1063 on this date, not that it was Adofo. More fundamentally, Barimah cannot demonstrate that the Investigation Letter, dated December 27, 2012, caused him an actual loss or injury with respect to a withdrawal made *before* he received the Investigation Letter.

Second, he states that he suffered injury by renewing his account in June 2013, citing to a signature card that shows Chris Bonsu as an individual named on the account ending in 1063. *See* Pl.'s Sealed Mot. 40 (citing Jt. Rec. MSJ_0428, ECF No. 49-8). It is true that Chirs Bonsu's name is on the signature card, but this fact, if accepted as true, does not in its solitary isolation

13

demonstrate how it caused Barimah injury or how it is related to BofA's letter addressing the result of Barimah's fraud complaint.

Barimah also cites to the record in his discussion of disputed facts stating that he incurred expenses for travel and for paying the Norman Law Firm fees and costs, *see* Pl.'s Sealed Mot. 20–21 (citing Jt. Rec. MSJ_0062, ECF No. 49-6), and that he refrained from bringing an EFTA claim against BofA within the statute of limitations, *see id.* at 21 (citing Jt. Rec. MSJ_0062, ECF No. 49-6). However, the closest that Barimah comes to supporting these statements is that he "decided to engage [an] attorney." *See* Jt. Rec., MSJ_0062. But he does not provide evidentiary facts to support what those costs and fees were or how he sustained them *in reliance on* BofA's Investigation Letter. Rather, Barimah's hiring an attorney to investigate whether the Investigation Letter was accurate or actionable reflects that he disagreed with the opinion explained in the letter, not that he accepted and relied on it. *See* Pl.'s Mot. 16 ("Plaintiff was not persuaded by BofA's persistent seemingly perfunctory investigation and failure to give any reasons why it had found that there was no error, Plaintiff gave instructions to the Norman Law [F]irm which took up the matter."). These statements are not enough to support his contention that he suffered actual loss or injury in reliance on the Investigation Letter.[7]

---

[7] Without explanation, advance permission of the Court, or Defendant's consent, Barimah filed a supplement to his reply, ECF No. 72, on November 30, 2015, over a month after filing his reply on October 28, 2015, and long after the deadline imposed by Loc. R. 105.2(a) for filing a reply brief. This supplement is an affidavit by Barimah stating under oath that he suffered certain injuries as a result of the Investigation Letter. This filing is untimely and has not been considered. Because I have found that the MCPA is inapplicable with respect to BofA's conduct regarding the Investigation Letter, even if this affidavit were to establish for the purposes of summary judgment that Barimah suffered actual loss or injury, I would still grant summary judgment in favor of BofA. Moreover, attempting to supplement the record to cure factual deficiencies *after* filing a reply brief, which afforded Defendant no opportunity to respond, would be patently unfair.

Finally, Barimah states that he lost the provisional credit associated with the account ending in 1063. *See* Pl.'s Sealed Mot. 20 (citing Jt. Rec. MSJ_0194, Ex. 49-7). However, this loss did not occur because of his reliance of a false or misleading statement on the part of BofA; instead, it was due to the conclusions that BofA reached that his fraud claim was unfounded. As a result, the loss of the provisional credit referenced in the letter is not an "actual loss or injury" for the purposes of Barimah's MCPA claim.

Barimah's conclusory and self-serving statements in his briefings are not enough to create a genuine dispute of material fact with respect to whether the Investigation Letter caused him actual loss or injury. Additionally, the two isolated citations to the record also fail to establish a genuine dispute as to whether he suffered loss or injury. Accordingly, even if the Investigation Letter did serve as a valid claim under the MCPA, there is no evidence that Barimah suffered actual loss or injury caused by BofA's letter, and his claim would fail.[8]

## III. SEALED MATERIALS

The parties have filed seven motions to seal.[9] This Court's Local Rules require that any motion to seal include "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Loc. R. 105.11. I will discuss the motions individually below.

### A. ECF No. 55

BofA filed this motion to seal with respect to its memorandum of law for its motion for summary judgment, Def.'s Sealed Mem., ECF No. 50-1, and Exhibits E, G, and H to its motion,

---

[8] Because I find that there is no genuine dispute of material fact with respect to whether the Investigation Letter caused Barimah to suffer actual loss or injury, I do not need to consider whether BofA sending the Investigation Letter to Barimah was an unfair or deceptive trade practice under § 13-301.

[9] No oppositions have been filed with respect to these motions, and the time to do so has passed. *See* Loc. R. 105.2(a).

ECF Nos. 51, 52, and 53, respectively.[10] These documents contain confidential business information regarding "BofA's procedures in investigating a fraud claim." *See* ECF No. 55. Unsealed, redacted versions of BofA's memorandum of law, ECF No. 49-1, and Exhibits E, G, and H, ECF Nos. 49-8, 49-10, and 49-11, respectively, have been filed on the docket. Accordingly, I find that there is sufficient justification to seal these documents and that no alternative would provide sufficient protection and will grant BofA's motion to seal, ECF No. 55.

### B. ECF No. 61

Barimah has filed a motion to seal with respect to his response to BofA's motion for summary judgment and cross-motion for summary judgment, Pl.'s Mot., ECF No. 58. This document references the confidential business information in BofA's motion for summary judgment and attached exhibits. An unsealed, redacted version of Barimah's response, ECF No. 59-1, has been filed on the docket. Accordingly, I find that there is sufficient justification to seal this document and that no alternative would provide sufficient protection and will grant Barimah's motion to seal, ECF No. 61.

### C. ECF Nos. 64

BofA has filed a motion to seal with respect to its reply in support of its motion for summary judgment and opposition to Barimah's cross-motion for summary judgment, ECF No. 63. There appears to have been an error in the initial filing of the unsealed, redacted version and the sealed version of this document. *See* ECF No. 65. As a result, the unsealed, redacted version is marked "filed in error" and is no longer available to the public, *see* ECF Nos. 62 & 65, and the

---

[10] BofA also filed ECF No. 54 under seal, which is the redacted portion of Exhibit E. This filing appears to be a duplicate of ECF No. 51. For the same reason that I will order ECF No. 51 to be sealed, I also will order ECF No. 54 to be sealed.

sealed version also is marked "filed in error," *see* ECF Nos. 63 & 65.  Accordingly, I will deny as moot BofA's motion to seal, ECF No. 64.

### D.  ECF No. 67

BofA has filed a motion to seal with respect to its second filing of its reply in support of its motion for summary judgment and opposition to Barimah's cross-motion for summary judgment, Def.'s Resp., ECF No. 66.  This document references and discusses the confidential business information in the other briefings.  As a result of the filing errors discussed above, the unsealed, redacted version of this document is no longer available to the public.  *See* ECF Nos. 62 & 65.  Having reviewed the redacted filing and compared it with the sealed filing, I find that there is sufficient justification to seal this document and that no alternative would provide sufficient protection and will grant BofA's motion to seal, ECF No. 67, contingent upon BofA refiling an unsealed, redacted version of its reply and opposition as directed below.

### E.  ECF No. 68

Barimah has filed a motion to seal with respect to his reply in support of his cross-motion for summary judgment, Pl.'s Resp., ECF No. 69.  This document references and discusses the confidential business information in the other briefings.  However, Barimah has not filed an unsealed, redacted version of his reply that is available to the public.  Having reviewed the sealed filing, I find that there is sufficient justification to seal this document and that no alternative would provide sufficient protection and will grant Barimah's motion to seal, ECF No. 67, contingent upon him filing an unsealed, redacted version of his reply as directed below.

### F.  ECF Nos. 71 and 73

Barimah has filed motions to seal with respect to Exhibits K and L, ECF Nos. 70 & 74, respectively.  Exhibit K consists of photocopies of his passports documenting his travel.  Exhibit

L consists of a medical certificate detailing certain of his medical conditions. Both of these filings contain sensitive personal information that is properly the subject of seal in its entirety. I find that there is sufficient justification to seal these documents and that no alternative would provide sufficient protection and will grant Barimah's motions to seal, ECF Nos. 71 and 73.

## IV. CONCLUSION

For the reasons explained above, I will GRANT Defendant's motion for summary judgment and DENY Plaintiff's cross-motion for summary judgment.

## ORDER

Accordingly, it is this 1st day of August, 2016, hereby ORDERED that

1. Defendant's motion for summary judgment, ECF No. 49, is GRANTED;

2. Plaintiff's cross-motion for summary judgment, ECF No. 59, is DENIED;

3. Defendant's motion to seal, ECF No. 55, is GRANTED;

4. Plaintiff's motion to seal, ECF No. 61, is GRANTED;

5. Defendant's motion to seal, ECF No. 64, is DENIED as moot;

6. Defendant's motion to seal, ECF No. 67, is GRANTED contingent upon Defendant filing an unsealed, redacted version of its reply and opposition by August 16, 2016;

7. Plaintiff's motion to seal, ECF No. 68, is GRANTED contingent upon Plaintiff filing an unsealed, redacted version of his reply by August 16, 2016;

8. Plaintiff's motion to seal, ECF No. 71, is GRANTED;

9. Plaintiff's motion to seal, ECF No. 73, is GRANTED; and

10. The Clerk of the Court shall CLOSE this case.

So ordered.

/S/
Paul W. Grimm
United States District Judge

dpb